UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SONS OF THE SOUTHERN CROSS, INC.
and JAMES BIBLE                                                                                    PLAINTIFFS

v.                                            No. 2:21-CV-02019

JOE HURST, in his official capacity as
Mayor of Van Buren, Arkansas; OLD
TOWN MERCHANTS ASSOCIATION,
INCORPORATED OF VAN BUREN; and
CITY OF VAN BUREN ARKANSAS                                                                         DEFENDANTS

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 action claiming a violation of Plaintiffs' First Amendment rights as incorporated against the states by the Fourteenth Amendment. Plaintiffs seek damages against Defendants Joe Hurst and the City of Van Buren Arkansas (collectively, "the City") and injunctive relief against the City and Defendant Old Town Merchants Association, Incorporated of Van Buren ("TOTMA"[1]). Before the Court is the City's motion (Doc. 22) for summary judgment. The City filed a brief (Doc. 23) and statement of facts (Doc. 24) in support. Plaintiffs filed a response (Doc. 27), brief (Doc. 28), and statement of facts (Doc. 29) in opposition. The City filed a reply (Doc. 30). The motion for summary judgment will be granted.

**I.   Standard of Review**

On a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party, grants all reasonable factual inferences in the nonmovant's favor, and grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a);

---

[1] "TOTMA" stands for "The Old Town Merchants Association," the name by which Defendant Old Town Merchants Association, Incorporated of Van Buren is commonly known.

1

*Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted).

**II.   Facts**

For many years, TOTMA has applied for and received a permit from the City of Van Buren to hold an evening Christmas parade on Main Street in downtown Van Buren, Arkansas. Historically, parade participants constructed parade floats and drove them down a portion of Main Street as parade attendees lined the street. TOTMA would place temporary roadblocks on cross streets and Van Buren police officers directed traffic away from and around the parade.

Plaintiff James Bible has lived in Crawford County, Arkansas for approximately fifteen or twenty years. He is the founder, president, and national commander of Plaintiff Sons of the Southern Cross, Inc., a national Confederate heritage organization headquartered in Crawford County. Plaintiffs have participated in the TOTMA Christmas parade for approximately 10 years. During that time, Plaintiffs regularly (and perhaps always) flew a Confederate battle flag[2] from their float.

In January 2020 TOTMA received a permit from the City for its 2020 Christmas parade,

---

[2] Throughout litigation the attorneys and most witnesses have referred to this flag as the Confederate flag, perhaps because it is the most popularly known flag associated with the Confederate States of America. Unless otherwise noted, the Court similarly identifies this flag as the Confederate flag.

to be held on December 12, 2020. The City added the parade to the calendar of events on the City's website. As various public health responses such as masking and social distancing were deployed in 2020 in response to the COVID-19 pandemic, TOTMA decided to hold a "reverse Christmas parade" in which floats would remain stationary along the Main Street parade route and parade attendees would drive down Main Street to view the stationary floats in the evening. TOTMA board member Lindsey Dodson acted as parade organizer and chair and unilaterally drafted rules that parade participants agreed to follow as part of their applications. Later in the year and nearer in time to the parade, Lindsey Dodson contacted Mayor Hurst for confirmation that the reverse parade should not be canceled in light of ongoing COVID-19-related restrictions. Lindsey Dodson also contacted the Van Buren Police Department to discuss differences in the logistics of traffic direction for a reverse parade.

Among the rules created by Lindsey Dodson for TOTMA's 2020 reverse Christmas parade participants was a prohibition on floats displaying any flag other than the flag of the United States of America. Bible heard these rules read aloud at a Crawford County Republican Committee meeting before Plaintiffs submitted their application for the 2020 reverse parade. The application also identified TOTMA member Joy Holman as a parade organizer and listed her contact information, but Holman had no decisionmaking authority over TOTMA's parade, and, apart from her duties as a point of contact, Holman only helped Lindsey Dodson place floats on Main Street. Because Plaintiffs previously had displayed a Confederate flag on their float without issue, approximately one month before the parade Bible's daughter placed a call to Holman. Bible's daughter explained that Plaintiffs had always displayed their Confederate flag in the past, mentioned the 2020 "American flags only" rule, and asked whether Plaintiffs would be allowed to display the Confederate flag from their float during TOTMA's 2020 reverse parade. Holman was

3

familiar with the Sons of the Southern Cross organization and told Hickerson she was fine with the Confederate flag and with Plaintiffs displaying the Confederate flag from their float. Subsequently, one of the treasurers for Sons of the Southern Cross filled out and submitted an application for the parade.

Bible, his family, and members of Sons of the Southern Cross then spent time and money preparing their float. The float displayed silhouettes of two American Civil War soldiers kneeling on either side of a fabric-draped cross. Below the cross was a manger and a lit sign reading "Under One God." Tents were erected on either side of the float behind the soldier silhouettes. One tent was labeled "US" and an American flag was posted behind it. The other tent was labeled "CS" and a Confederate flag was posted behind it. Plaintiffs intended their float to communicate that Union soldiers and Confederate soldiers both worshipped one god and that Confederate soldiers and the Confederate flag were not evil.

Eight days before the parade, Bible called Holman to again communicate Plaintiffs' intent to display the Confederate flag from their float, and Holman told Bible that Sons of the Southern Cross had participated in the parade for a decade without issue and flying the Confederate flag would be fine. After one of the calls with Bible or his daughter, Holman told Lindsay Dodson about the conversation. Lindsey Dodson explained that the rule was clear in the application that only the American flag could be displayed on a float. Holman did not call Plaintiffs back to correct her misstatement of the rules.

On the morning of TOTMA's reverse parade, Plaintiffs set up their float on Main Street. After setting up the float, Bible and those who assisted him in setting up Plaintiffs' float left. In the early afternoon, a few hours before the reverse parade was set to begin, a member of the public drove through the parade route and noticed the Confederate flag displayed on Plaintiffs' float. The

member of the public was bothered by the Confederate flag's presence in a Christmas parade and, believing it was divisive, contacted Mayor Hurst with her complaint using Facebook Messenger. Mayor Hurst responded that he understood her concerns but that the parade was organized and run by TOTMA, so she then sent a Facebook message to TOTMA. Lindsey Dodson saw the complaint but did not respond, and so the member of the public messaged Mayor Hurst to tell him TOTMA had not responded. A bit later, Mayor Hurst responded to her "I just talked to TOTMA, and this is supposed to be removed . . . no flags." (Doc. 24-7, p. 7 (Deposition of Starlene Dugan, p. 26:5-11)).

That same afternoon, Holman was in Lindsey Dodson's store on Main Street. Lindsey Dodson was busy managing last-minute parade details, including cancellations due to COVID-19, when she received the member of the public's Facebook complaint. Matt Dodson (a member of both TOTMA and the Van Buren City Council, and Lindsey Dodson's husband) entered the store holding his phone and told Lindsey Dodson "[Mayor Hurst]'s been getting multiple calls and texts on his business and personal phone and – about the Confederate flag being displayed, and we needed to have them take it down."[3] (Doc. 24-5, p. 16 (Deposition of Joy Holman, p. 63:3-9)). Lindsey Dodson walked down to Plaintiffs' float to confirm the presence of the Confederate flag and direct Plaintiffs to remove it, but no one was there, so she returned to her store to deal with other parade business. Matt Dodson called Mayor Hurst to tell him TOTMA was having the Confederate flag removed.

At some point another TOTMA board member, Daniel Perry, went to Lindsey Dodson's

---

[3] The Dodsons are friendly with Mayor Hurst and his wife and attend the same church. Lindsey Dodson testified that Matt Dodson and Mayor Hurst have known one another for approximately 30 years, and that it was the Dodsons and Hursts' habitual practice that the husbands communicated with one another or the wives communicated with one another.

5

store to offer to help with the parade. In addition to being one of three at-large board members of TOTMA, Perry is a Lieutenant with the Van Buren Police Department.[4] He was not wearing his uniform that day, but was on duty overseeing the two police officers the City assigned to direct parade-affected traffic. Lindsey Dodson had pulled Plaintiffs' signed application form that displayed the parade rules and was leaving her store to return to the float to talk to Plaintiffs regarding the flag's presence on their float. She told Perry that Mayor Hurst had received complaints that the Confederate flag was being flown on Plaintiffs' float even though TOTMA's rules prohibited it, and asked Perry to go have Plaintiffs take it down.

Perry went to the float and again no one was there, so he returned to Lindsey Dodson, got Plaintiffs' phone number from their application, and called. Bible's wife answered and Perry introduced himself as a TOTMA boardmember and as a Van Buren police officer. Bible's wife brought the phone to Bible, and Perry again introduced himself as a member of TOTMA and a Van Buren police officer. Perry then explained Mayor Hurst was receiving complaints about the Confederate flag, and Plaintiffs either needed to take the flag down or remove the float, or it would be towed. Bible refused and hung up. After some discussion with his family, Bible then called Perry back and offered to remove the Confederate battle flag and replace it with the first national flag of the Confederate States of America—a flag Bible believed few would recognize or view as divisive. Perry rejected the compromise and again told Bible to remove the flag or the float or the float would be towed, and if it could not be the parade would be shut down.[5]

---

[4] Perry has not been made a Defendant to this action in either his official or individual capacities.

[5] Perry's recollection of the phone calls with Bible differed from Bible's recollection. For example, Perry recalls only one phone call and does not recall identifying himself as a police officer, but Perry also could not recall everything that was said. Perry testified in his deposition, however, that he thought he probably would not have been able to actually have the float towed if Plaintiffs refused to remove the Confederate flag or the float because it was legally parked, and

6

After the second phone call, Bible and his family traveled to the float to make sure it was not towed away. The float was on a $15,000 trailer that belonged to another member of the Sons of the Southern Cross and was used by him for business. Bible intended to protect the trailer long enough to let the trailer's owner make the decision of whether to remove it from the parade or leave it and risk it being towed. Ultimately, the decision was made to remove the float. Plaintiffs slowly towed the float down Main Street to the courthouse, where they stopped and disassembled those parts of the float designed only for display, rather than towing. Plaintiffs then towed the trailer to various locations around Van Buren to publicly display what they still could of the float before returning it home for full disassembly.

The following Monday, Bible called Holman to ask why Plaintiffs had been ordered out of the parade. Holman told Bible TOTMA had to do what Mayor Hurst told them to do.

### III.     Analysis

The flying of a flag is expressive conduct protected from governmental regulation by the First Amendment to the United States Constitution. *See, e.g.*, *Spence v. Washington*, 418 U.S. 405, 410 (1974) ("The Court for decades has recognized the communicative connotations of the use of flags. In many of their uses flags are a form of symbolism comprising a 'primitive but effective way of communicating ideas . . .,' and 'a shortcut from mind to mind.'" (quoting *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632 (1943))). The City spends four pages of its brief attempting to argue that Plaintiffs' flying of the Confederate flag was not expressive conduct that could be protected by the First Amendment because in the context established by these circumstances there was not a great likelihood viewers would understand Plaintiffs' intended

---

that he couldn't shut down the parade, and admitted that if he did tell Bible these things, he was lying in order to get Bible to take the flag down.

message. The City misunderstands the well-settled standard used to evaluate expressive conduct. It does not matter whether parade attendees understood Plaintiffs' intended message that Confederate and Union soldiers worshipped the same deity and that Confederate soldiers and the Confederate flag were not evil, or instead believed Plaintiffs were communicating an intent to sow division or support white supremacy. "[A] narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' . . . would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995) (quoting *Spence*, 418 U.S. at 411).

What matters is whether in the context created by these circumstances parade attendees would reasonably understand that Plaintiffs were communicating through the use of the Confederate flag, that Plaintiffs' conduct was expressive. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984) ("It is also true that a message may be delivered by conduct that is intended to be communicative and that, in context, would reasonably be understood by the viewer to be communicative."). Given the absence of any circumstances in the record that could support a reasonable belief that Plaintiffs' act of flying the Confederate flag was a noncommunicative act, in this case it is unquestionably expressive conduct protected from government restriction by the First Amendment to the Constitution.

Although it is clearly established that the First Amendment protects Plaintiffs' expressive conduct of flying the Confederate flag from regulation by the City, it is equally clearly established that the First Amendment protects TOTMA from being required to include Plaintiffs' Confederate flag in TOTMA's parade. *Hurley*, 515 U.S. at 570 ("The selection of contingents to make a parade is entitled to similar protection [by the First Amendment]."). The First Amendment does not

8

require TOTMA to allow participants in its parade to engage in any expressive conduct they like. "[O]ne who chooses to speak may also decide 'what not to say.'" *Id.* at 573 (quoting *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 16 (1986)).

Turning to the substance of Plaintiffs' claims, an injured plaintiff may seek legal or equitable relief against any person who:

> under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. "A municipality constitutes a person for purposes of § 1983, but is liable only when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Reinhart v. City of Brookings*, 84 F.3d 1071, 1073 (8th Cir. 1996) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "The First Amendment guarantee of free speech guards against abridgment through state action alone. It does not inhibit private restrictions on speech." *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007). The City may be liable to Plaintiffs under § 1983 only if the City, or "a private person whose action may be fairly treated as that of the municipality itself," restricted Plaintiffs' speech. *Reinhart*, 84 F.3d at 1073.

Private action may be fairly attributed to a municipality only when there is a close nexus between the municipality and the challenged action. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S 288, 295 (2001). "The one unyielding requirement is that there be a 'close nexus' not merely between the state and the private party, but between the state and the alleged deprivation itself." *Wickersham*, 481 F.3d at 597 (quoting *Brentwood Acad.*, 531 U.S. at 295).

There is no dispute of fact that when TOTMA, through boardmember and parade organizer Lindsey Dodson, imposed the "American Flags only" rule on the reverse Christmas parade,

9

TOTMA did so solely as a private actor. TOTMA applied for a parade permit and the City granted the permit in January 2020, allowing TOTMA to block off a portion of Main Street to non-parade traffic. Lindsey Dodson confirmed with Mayor Hurst that TOTMA's parade was still allowed in light of ongoing COVID-19-related restrictions, and conferred with the Van Buren Police Department about traffic logistics. TOTMA established rules and reviewed applications for parade participation without input from the City. The City added the parade to its online calendar of events occurring in the City and sent police officers to control traffic around the parade area. No reasonable juror could find that this conduct pervasively entwined the City and TOTMA such that it made TOTMA's parade the City's parade. Nor could a reasonable juror find any nexus, close or otherwise, between TOTMA's decision to impose an "American Flags only" rule on its parade and the City's decision to grant TOTMA a parade permit. *Accord Reinhart*, 84 F.3d at 1073 ("The fact that Brookings permitted the committee to adopt rules and enforce them does not convert the private action of the committee into state action. Nor does the fact that a private organization was temporarily using public property transform its actions into state action." (citations omitted)).

The primary legal question in Plaintiffs' case is whether when TOTMA parade organizer Lindsey Dodson enforced TOTMA's "American flags only" rule by asking TOTMA member Daniel Perry to direct Plaintiffs to remove either the Confederate flag from their float or their float from the parade, she did so as a private actor. If so, neither the City nor TOTMA is liable to Plaintiffs. But just as a municipality cannot compel private parade organizers to include speech in their parades, it cannot compel them to exclude it. If TOTMA was compelled by the City to have Plaintiffs remove the flag or float, or if the City was so pervasively entwined in TOTMA's decision at the parade to remove Plaintiffs' flag or Plaintiffs' float that TOTMA's conduct was fairly attributable to the City, then both the City and TOTMA can be liable to Plaintiffs under § 1983.

To prevail on this motion and proceed to trial, Plaintiffs must demonstrate a dispute of fact exists material to either compulsion or pervasive entwinement and cite to sufficient evidence in the record to show that the dispute is genuine and a reasonable jury could resolve the matter in Plaintiffs' favor.

With respect to whether the City compelled TOTMA to remove Plaintiffs' flag or float, material facts are disputed but the dispute is not genuine because it is not supported by admissible evidence that would enable Plaintiffs to prevail before a jury. After receiving a public complaint about the Confederate flag on Plaintiffs' float Mayor Hurst contacted Matt Dodson, who then told Lindsey Dodson "[Mayor Hurst]'s been getting multiple calls and texts on his business and personal phone and – about the Confederate flag being displayed, and we needed to have them take it down." Lindsey Dodson testified that by that time she had already seen a complaint submitted to TOTMA's Facebook page and that she had decided independently of Mayor Hurst's communication with Matt Dodson that she would ask Plaintiffs to abide by parade rules she believed they had agreed to and remove either their flag or their float.

Plaintiffs dispute this testimony and argue that TOTMA was compelled by Mayor Hurst to have Plaintiffs remove their flag, but there is no admissible evidence in the record to render this dispute genuine. Holman testified that after hearing Matt Dodson's statement she believed Mayor Hurst was ordering TOTMA to direct Plaintiffs to remove the flag, but Holman is not a TOTMA decisionmaker whose subjective beliefs are relevant to whether TOTMA perceived Mayor Hurst's communication as compulsion, and Plaintiffs offer no testimony to show that Lindsey Dodson, the relevant TOTMA decisionmaker, understood Mayor Hurst's communication to be an order. Instead, Plaintiffs offer Holman's opinion that TOTMA was compelled to obey because Mayor Hurst is "the director of our city" and "in charge." (Doc. 24-5, p. 12 (Deposition of Joy Holman,

11

p. 47:13-24)). There is no evidence that the laws of the City of Van Buren or the controlling documents for TOTMA require TOTMA to obey requests or commands from the Mayor about what flags are or are not allowed on a float in TOTMA's parade, and no testimony from Holman that could otherwise show her opinion that TOTMA was required to obey Mayor Hurst is "rationally based on [her] perception." Fed. R. Evid. 701(a).

Lindsey Dodson's testimony that she decided, independently of Mayor Hurst's communication, to have Plaintiffs remove their flag is not genuinely disputed. "Private action is not converted into state action unless the state . . . has compelled the act; mere acquiescence is not enough." *Reinhart*, 84 F.3d at 1073. The record demonstrates that TOTMA boardmember and parade organizer Lindsey Dodson's decision to exclude Plaintiffs' flag or Plaintiffs' float was the decision of a private actor and was not compelled by the City.

Plaintiffs also argue that the City was so pervasively entwined with the enforcement of parade rules that TOTMA's decision to have Plaintiffs remove their flag or float was fairly attributable to the City. Accepting as true Bible's recollection of his phone calls with Perry, in enforcing the "American Flags only" rule Perry identified himself as a police officer. Although Perry was not uniformed at the time he was enforcing the rule and witnesses testified Perry was acting in his capacity as a TOTMA boardmember, if Perry leaned on his authority as a police officer when he enforced the rule, a reasonable jury could find Perry was a state actor.

Whether Perry was a state actor when he enforced the private rule is not enough for official capacity liability against the City and TOTMA, however. Plaintiffs must also show that Perry's enforcement of private rules as a state actor was pursuant to the City's official policies or customs. They cannot do so. Again, it is undisputed that the City did not impose the "American Flags only" rule, and it is not genuinely disputed that TOTMA was not compelled by the City to enforce

12

TOTMA's own rule. And unlike *Wickersham*, where "the police department's security plan instructed the officers to enforce [a private actor's] rules rather than city ordinances, and police took an active role in identifying and intercepting protestors at the air show," *Wickersham*, 481 F.3d at 598–99, in this case Perry's enforcement of a private rule was pursuant to the direct request of TOTMA, acting through Lindsey Dodson.

This is not a case where police were tasked by their city with enforcing private speech regulations on attendees at an airshow. This is not even a case where police were requiring reverse parade *attendees* to remove any flag but the American flag from their vehicles as they passed down the permitted parade route. This is a case where a parade participant was directed by the parade organizer to remove a flag from a float. Assuming still that Perry acted as a police officer and state actor when he directed Plaintiffs to remove their flag or their float, his conduct was no different than the conduct of a police officer being called to remove a trespasser. *Accord Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001) (private party's mere invocation of state legal procedures does not constitute state action).

TOTMA had a permit from the City for a reverse parade, but TOTMA's decision about what speech its parade participants expressed during that parade did not come from authority TOTMA received through that parade permit. Instead, it was an exercise of TOTMA's own First Amendment rights, TOTMA's own protection from state authority.[6] Even assuming a reasonable jury could find that Perry was a state actor when he enforced TOTMA's "American Flags only" rule, it could not find that "the claimed deprivation 'resulted from the exercise of a right or

---

[6] Indeed, had Perry as a police officer allowed Plaintiffs' flag to remain on the permitted route of the reverse parade, had he instead told TOTMA that it must allow Plaintiffs to display their flag from their float in TOTMA's parade, it likely would be TOTMA bringing a § 1983 action against the City for a violation of the First and Fourteenth Amendments. *See generally Hurley*, 515 U.S. 557.

13

privilege having its source in state authority.'" *Wickersham*, 481 F.3d at 597 (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982)).

Because Plaintiffs cannot show that TOTMA's decisions to prohibit any flag but the American flag and to remove Plaintiffs' flag or float from TOTMA's parade were compelled by or fairly attributable to the City, Plaintiffs cannot demonstrate a constitutional violation occurred that would support their claims for damages and injunctive relief against the City. Separate Defendant TOTMA has defaulted, but the complaint disclaims damages against TOTMA and seeks only injunctive relief premised on the same legal theory of a constitutional violation underlying Plaintiffs' claims against the City. Because Plaintiffs cannot show any violation of their First and Fourteenth Amendment rights, they cannot make the demonstration necessary to obtain permanent injunctive relief against TOTMA in a motion for default judgment. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."). Because Plaintiffs have disclaimed damages against TOTMA, the Court need not consider whether the allegations or the record support any state law theory of damages recovery against TOTMA. Instead, summary judgment for TOTMA is also proper.

### IV.   Conclusion

IT IS THEREFORE ORDERED that the motion for summary judgment (Doc. 22) is GRANTED and this case is DISMISSED WITH PREJUDICE. Judgment will be entered

separately.

    IT IS SO ORDERED this 26th day of January, 2022.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
U.S. DISTRICT JUDGE